**Richard BLYTHE and Jean Blythe, Plaintiffs,**

v.

**John TARKO, Fred Glover, and United States of America, Defendants.**

**Civ. A. No. 631–F.**

United States District Court
N. D. West Virginia,
at Fairmont.

Oct. 13, 1960.

Mary Frances Brown and W. Mote Thompson, Jr., Stathers & Cantrall, Clarksburg, W. Va., for plaintiffs.

Oscar J. Andre and Willis O. Shay, Steptoe & Johnson, Clarksburg, W. Va., for defendant John Tarko.

Russell L. Furbee, Furbee & Hardesty, Fairmont, W. Va., for defendant Fred Glover.

Albert M. Morgan, U. S. Atty., and Robert J. Schleuss, Asst. U. S. Atty., Fairmont, W. Va., for defendant U. S.

HARRY E. WATKINS, Chief Judge.

Plaintiffs bring this action for personal injuries sustained by them while driving from Fairmont, West Virginia, to Morgantown, West Virginia, on March 29, 1959. The driver of the car which hit them was defendant Tarko. Plaintiffs have also sued defendants Glover and the United States under the theory that Tarko was an employee of both Glover and the United States acting within the scope of his employment in carrying United States mail at the time of the accident. Plaintiffs claim that the United States had a contract with Glover to carry mail; that Tarko worked for Glover, and that at the time of the accident he was the agent of both Glover and the United States, acting within the scope of his employment in carrying mail. The United States claims that Glover was an independent contractor. Both defendants deny the agency relationship. They claim that at the time of the accident Tarko was not an employee of theirs, and if he was such an employee, he was on a lark of his own, and not acting within the scope of any such employment in carrying mail at the time of the accident. At a pretrial conference, it appeared that the facts relating to the issue of whether Tarko was acting within the scope of his employment could be stipulated and agreed. Such a stipulation was filed, and it was agreed that, in advance of trial, the Court would determine whether such stipulated facts on the single issue of scope of employment constituted an issue of fact for jury determination or whether under the stipulation the question of scope of employment was a question of law for the Court. The question was raised by defendants Glover and United States upon motions to dismiss. If Tarko was on an enterprise of his own at the time and place of the accident, then whether he was an independent contractor or employee of Glover or an employee of the United States becomes academic. If there was no issue of fact for jury determination and if the Court would hold that the stipulated facts justified no other reasonable inference than that Tarko was not acting in the scope of his employment in carrying mail, but was on a frolic of his own at the time of the accident, then the Court should dismiss the defendants Glover and Unit-

ed States, and the case would proceed to trial as to the defendant Tarko. If the stipulated facts did raise a jury question, the other defendants would remain in the case and all issues, including employment, scope of authority and that of independent contractor would be tried.

The facts are uncontroverted and only one inference can be drawn from such facts. They show that Tarko was not acting within the scope of his alleged employment in carrying mail at the time of the accident, and that the motions of the defendants Glover and the United States to be dismissed must be sustained. Assuming that Tarko was the agent of both Glover and the United States to carry mail (which agency is denied), his only duty on the day of the accident was to be at Morgantown at 9:45 P.M., to pick up mail and take it to Connellsville, Pennsylvania. He left home at 1:30 P.M., and drove 30 miles to Morgantown. Instead of stopping there, he came on to a Fairmont club (19 miles from Morgantown) in order to spend the afternoon and evening drinking and in other pleasure of his own. In making this unnecessary trip to and from Fairmont, he was on a frolic of his own. If this issue came to trial before a jury on such stipulated facts, the evidence would not be sufficient to go to a jury on such issue, and the Court would be obliged to direct a verdict for such defendants.

Briefly stated, the stipulated facts are as follows:

"1. The defendant Tarko was the owner and driver of the Packard automobile involved in the collision with the Blythe automobile and was the sole occupant of his automobile at the time of the collision.

"2. The collision between the Tarko and Blythe automobiles occurred on Easter Sunday, March 29, 1959, on West Virginia Route 73, * * *.

"3. Tarko lived near Uniontown, Pennsylvania. He had driven from Uniontown to Fairmont in the afternoon of March 29, with the intention of proceeding that evening from Fairmont to Morgantown to pick up United States Mail at Morgantown between 9:45 and 10:15 p. m. At the time of the collision with the Blythe automobile, Tarko was traveling from Fairmont to Morgantown to pick up the United States Mail at the Post Office in Morgantown and carry it to Connellsville, Pennsylvania.'

"3(a). On Sunday, March 29th, the only mail which Tarko attempted or intended to carry personally was the mail which he was to pick up in Morgantown between 9:45 and 10:15 P.M. He was to carry that mail from Morgantown, West Virginia, to Connellsville, Pennsylvania. This included mail which was to be brought from Fairmont to Morgantown by a contractor named Boyles. The distance from Uniontown to Morgantown is approximately thirty miles, and the distance from Morgantown to Fairmont about nineteen miles, making a total mileage of about forty-nine miles from Uniontown to Fairmont.

"In going to Fairmont Tarko had to go through Morgantown and did go through Morgantown on Sunday, March 29th. The highway which he traveled passed about two blocks from the post office where he was to pick up the mail that night. Instead of remaining in Morgantown until 9:45 P.M. he went on to Fairmont as he had planned in order that he could spend the afternoon at the Eagles Club in Fairmont. He could have stayed at home until about 8:30 P.M. and arrived in Morgantown in time to pick up his mail, but he wanted to spend the afternoon in Fairmont at the Eagles Club and that was the reason that he left Uniontown at 1:30 P.M. It was his intention at all times to come on through Morgantown to Fairmont to spend the afternoon at the Eagles Club. The mail which he was to pick up in Morgantown was due to arrive at

9:45 P.M. and he was to leave Morgantown upon receipt of such mail.

"Tarko arrived at the Eagles Club in Fairmont at about 3:30 P.M. and remained there continuously until some time after 8:30 P.M. While there he drank intoxicating liquors. Upon leaving the club he walked about one block to the post office lot where he got into his car and drove to the scene of the accident, a distance of about seven miles. He did not stop anywhere after getting into his car until the time of the accident. The accident occurred about 10:25 P.M."

Glover knew that at times Tarko traveled to Fairmont on Sunday to wait until time to go to Morgantown for the evening pickup of mail and voiced no objection to it.

Tarko was arrested at the scene of the accident, put in the Fairmont jail over night, and later pleaded guilty to driving his Packard automobile under the influence of intoxicating liquors.

■■ When facts are undisputed as to a question of scope of employment, there are two alternatives: (1) where the evidence is not open to conflicting inferences—where reasonable minds could not differ, it is a question of law for the Court; and (2) where the agreed facts do admit to more than one reasonable inference or interpretation—where reasonable minds could differ, the question of scope of employment is for jury determination. As stated in 3 C.J.S. Agency § 330b(2):

"Questions of fact to be determined by the jury or other trier of facts include questions as to the nature and extent of the authority of an agent and as to whether his authority comprehends the act or contract in controversy, unless the evidence is undisputed and not open to conflicting inferences or it conclusively shows lack of authority or is manifestly insufficient to show authority." Bank of White Sulphur Springs v. Lynch, 1923, 93 W.Va.

382, 116 S.E. 685; Moore v. Burriss, 1949, 132 W.Va. 757, 54 S.E.2d 23.

Counsel may prepare an appropriate order in accordance with the views expressed above.